CaRuthees, J.,
delivered the opinion of the court.
There are several questions raised by the record in this case, but the one mainly argued, is, whether the statute of limitations protects the vendee of land in possession under a title bond, against a bill filed by the vendor or his assignee to sell the land for the unpaid purchase money, more than seven years after it became due.
As our opinion upon this point is decisive of the case, it is unnecessary -to notice the other grounds assumed in defense.
This point arose and was decided in the case of Lusk & Cain vs. Layne, at Nashville, the term before last, and a written opinion delivered, which was withheld from publication, because at the ensuing term here several cases came up, including the one now *588 under consideration, involving the same question, which, at the urgent request of a portion of the bar, who regarded it as a question of great importance to the community, as it certainly is, were continued for reargument at the present term.
After giving the fullest consideration to the arguments now made, and patiently reviewing the whole subject and the authorities bearing upon it, we are unable to change the opinion heretofore formed and announced.
¥e think a possession of seven years, by the ven-dee claiming the land by virtue of his purchase, as evidenced by the bond for the title under which he holds, gives him a right of possession that cannot be disturbed by the vendor by a bill to enforce his lien for unpaid purchase money, which has been due above seven years. Such lien is barred by § 2 of the act of 1819, ch. 28. The words are that no person shall have “any action or suit, either in law or equity, for any lands, tenements, or hereditaments, but within seven years next after his right to commence such action shall have come, fallen or accrued; and that all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments, shall be had and sued within seven years next after the title or cause of action or suit, have so accrued or fallen, and at no time after the said seven years shall have passed.”
This is a suit in equity upon a cause of action. The object is, to take the land for the satisfaction of the notes for the unpaid purchase money on the ground of lien retained. This, then, is the “cause” and object of the present action. "When did it “ accrue, come, or *589 fall,” in the words of the act, to the complainant, or Ms assignee'? The answer is, certainly on the day the notes became due for the consideration.
The defendant has been all the time holding for himself, and claiming under his. purchase a right to the land to the boundaries prescribed in the title bond. It is an equitable title, to be .sure, but still he claims to be the owner and to hold for himself alone. He certainly claims to hold against the vendor, because it is Ms title which he has purchased, and of which he holds a good and valid transfer in. equity.
It is true that the legal title remained in the vendor, that is, he did not transfer the .title according to the forms of law, and was not bound to do so until the consideration was fully paid. The vendee could not force the conveyance of the legal title without shewing that he had paid for the land, nor could the vendor force the payment of the price without maMng the title good. In this respect they were trustees for each other, the one for the title and the other for the money, and be dealt with as such by a court of equity. These trusts, however, in cases of ordinary title bonds, are not express, but implied. Express trusts may be certainly raised in the contract of the parties, but in the usual bonds simply for title, the trusts are only implied by law. 10 Peters., 224. So, if there be any thing in the argument that 'the statute will not run because of the existence of a trust which is not admitted to be beyond doubt since the act of 1819, yet it does not control this case, because we do not understand that an express trust exists in such a case as the •present. If it be an implied trust, it is admitted on *590 all Rands, that so far as that is concerned, it presents no obstacle to the application of the statute. The limitation acts generally apply only to suits in courts of law, and are only enforced in courts of equity, by analogy, in cases of concurrent .jurisdiction. There was much propriety, .then, in the principle, that in cases of express trusts which were only cognizable in a court of equity, that the statute of limitations did not run. But our act of 1819 expressly applies to all suits in equity as well as law, for the recovery of land. It may, therefore, be well doubted whether any such distinction now exists in suits for land. But the view we take of the character of that trust, which exists between vendor and vendee, renders it unnecessary to decide that point.
It is argued that this relation of vendor and vendee by bond, is analogous to that of mortgagor and mortgagee, and that as the statute does not run in the latter case, it will not in the former. There is much plausibility in this argument, but it only needs to be probed to manifest its unsoundness.
It is true that the two relations are often assimilated to each other, and that they have some points of resemblance; but so far as regards the principles on which the statute of limitations are' applied, there is no analogy.
The mortgagee has a lien on the land conveyed for the debts secured by the mortgage deed; so has the vendor a lien upon the land sold for the debt contracted for it; and these debts attach to the lands, have priority over all others, and cannot be defeated but by the conduct of the creditor himself. In both cases, too, the *591 security for the debts passes to any one to whom the evidence of them may be assigned. In these, and some other respects, the two relations resemble each other, but in many particulars they are most dissimilar and unlike. The mortgagee only claims to hold the land as a security for his debt, and is accountable for the rents. He is bound to account. The vendee holds for himself, is not bound to account, and his title is alienable, devisa-ble and descendable. The former holds possession for the mortgagor until the debt is paid out of the rents and profits, and may, by the nature of the contract at the time agreed upon, if the debt is not paid, have the property sold for that purpose. In the ease of sale, the vendee is under no such obligation. He claims the property as his own; the rents and profits are his. The law, and not his contract, imposes the lien for the unpaid purchase money; the law, and not his contract, raises whatever trusts may exist in the case.
How, it is believed that .this view of the two relations conclusively shows that it does not by any means follow, that because the statute of limitations does not run between mortgagor and mortgagee, it does not apply between vendor and vendee.
It is clearly and uniformly held that the statute never runs, except the possession be adverse. And this, and not the question of trust, presents the only difficulty in the class of cases which we are now considering.
It is insisted that the possession of the vendee under his 'equitable title, is not hostile or adverse, but friendly and in subjection to the legal title of the vendor.
■ Let it be borne in mind that the true question is, not whether the title of the defendant is friendly to, *592 and consistent with, that of the complainant, for this is the case in a sale by deed conveying the legal title, as well as by bond conveying the equitable title. 4 Peters, 506. 7 Wheaton, 535, 547, 548. We presume the only difference in the. effect of the statute in the two cases would be, that in the former case a perfect title to the property would be worked out under the 1st section of the act, and 'in the latter, only a right to the possession under the second section.
But in either case, and, indeed, in all cases, the possession must be actmerse. ' Story vs. Saunders, 8 Humph., 670. And what is an adversary holding of land? It is not that of a trustee, lessee, cestm que trust, tenant in common, or mortgagee, because they do not claim to hold exclusively for themselves, but acknowledge the right to be in' others, unless, indeed, a hostile attitude is assumed to the knowledge of the true owner; in which case, the statute instantly begins to perform its office, and will create the hcvr in the prescribed time, unless suit is instituted, except, perhaps, in the single case of a mortgage; but it is the enjoyment of land, under a claim or color of right to the land, on the part of the possessor. 1 Bouv. Law Dictionary, 78. 3 East., 394. 1 Pick., 466. 1 Dall., 67. 2 Serg. & Rawle, 527. 9 Johns. R., 174. 18 Johns., 40. 5 Peters, 402.
In Brodstreet vs. Huntington, 5 Peters, 439, it is said by the supreme court of the United States, that “where one in possession holds for himself to the exclusion of all others, the possession so held must be adverse to all others, whatever relation in point of interest or privity he may stand in to others.” Again, *593 it is said, “the fact to be determined is, whether the party holds possession for himself or another.” The fact'of possession being proved, the only remaining enquiry is into the quo animo. Did he hold for himself, or, as in the case of a trustee, lessee, &c., for, or under another? If the former, it is adverse, and the statute may be set up. In the same case, it is said, “actual ouster is not requisite either to be presumed or proved; ” “ adverse possession may exist without it.” In Boon vs. Chiles, 10 Peters, 224, the possession of a vendee under a bond, is decided to be adverse as to the property.
Mow, can it, for a moment, be questioned that a purchaser of land, of which he enters into the possession, whether his title is legal or equitable, holds and claims the land as his own whether he has paid for it or not? If so, his possession is adverse, and therefore falls under the protection of the statute. Mot the first section, by which his title would not be perfect and absolute, for want of a grant, deed, “ or other assurance purporting to convey an estate in fee simple,” but the second section, because he has had adverse possession for seven years without any suit at law or equity against him; or, rather, because the suit he is defending was not prosecuted within seven years after it accrued.
We are referred to cases decided by our predecessors in this court, in which the law is laid down to be, that the vendee by bond for title, by virtue of seven years’ possession, “ does not become owner of the fee, and clothed with the legal title as against the vendor.” 2 Meigs’ Dig., 749. This, we do not controvert. The *594 question decided in those cases is, that the vendee does not become owner of the fee and vested with the legal title, as against the vendor; this would require the application of the first section as before stated. But the question here is, does he not become clothed with a possessory title, or right to the possession under the second section, as against the vendor and all others? Hone of the cases expressly negative this idea.
In Sheratz vs. Nicodemus, 7 Yerg., 9-13, it is decided “that the vendor’s lien is lost, and cannot be enforced against the vendee in possession unless a bill for that purpose be filed within seven years after the purchase money becomes due. It is true that a deed was made in that case, to the vendee; but upon principle, we can see no difference in that case, and this, as regards the application of the statute, except as to the character of the title conferred by its operation as before explained. In both cases the bar is perfect; the protection complete. There is no hardship in the case. The vendor, as a creditor, has the advantage of all others, provided he exercises it in the time allowed, by filing a bill to enforce his lien; but his failure to do so, deprives him of this preference and advantage, but does not affect the validity of his debt; that is not barred, but only his lien. He has the same right with all other creditors, by pursuing the proper course to subject this, or any other equity of his debtor, to the satisfaction of his debt. But his neglect to enforce his peculiar remedy on the property in time, only reduces him to an equality with general creditors whose claims may be equally meritorious, and protects the possessor of the land according to the policy which dictated the passage of all *595 statutes of limitations, except against that liability for debts to be enforced in the ordinary mode by all creditors alike.
The result is, that the decree in this case, dismissing the bill, will be affirmed.
Totten, J., dissented.